Veronica A. Procter
PROCTER LAW, PLLC
2718 Montana Avenue, Suite 200
P.O. Box 782
Billings, MT 59103
Telephone: (406) 294-8915
vp@procterlawfirm.com

*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| JANE DOE NO. 1,<br><br>    Plaintiff,<br><br>v.<br><br>MONTANA STATE UNIVERSITY,<br><br>    Defendant. | Case No. CV-19-<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## NATURE OF ACTION

1. This is a civil rights action brought under Title IX of the Education Amendments of 1972, as amended, 42 U.S.C. § 1983 for violations of equal protection under the Fourteenth Amendment, and for violations of state law. Plaintiff Jane Doe No. 1 was raped by a fellow student while attending Defendant Montana State University ("MSU"). Subsequently, Jane Doe No. 1 filed a complaint with MSU's Office of Institutional Equity ("OIE").

Pursuant to MSU's Discrimination Grievance Procedures for Allegations of Violations of the Discrimination, Harassment, Sexual Misconduct, Dating Violence, Domestic Violence, Stalking and Retaliation Policy, OIE was to initiate and complete its investigation within forty (40) days. Instead, OIE took over ten (10) months to complete its investigation and issued a finding eleven (11) months after the complaint was filed. Meanwhile, Jane Doe No. 1 dropped out of school because of the rape and emotional/psychological effects thereof and her rapist graduated from MSU with no consequences. MSU's deliberate indifference and failure to take timely action in response to Ms. Doe No. 1's report violated its own policies and federal law. MSU acted with gender based discriminatory intent in failing to timely respond to her complaints and thus, unreasonably interfered with Jane Doe No. 1's access to educational programs at the University.

## PARTIES

2. Plaintiff Jane Doe No. 1 is a former Montana State University student who resides in Bozeman, Montana.

3. Defendant Montana State University is a public university located in Bozeman, Montana.

## VENUE

4. Jurisdiction over federal claims under Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681-88 and under 42 U.S.C. §§1983

and 1988, which provide for attorney and expert fees for vindication of civil-rights claims, is asserted under 28 U.S.C. §§1331 and 1343.

5. Jurisdiction over state-law claims is asserted under 28 U.S.C. §1367, which grants supplemental jurisdiction over claims that are part of the same case or controversy as claims over which the Court has original jurisdiction.

6. The Court has personal jurisdiction over defendant and venue is proper here under 28 U.S.C. §1391 because the relevant events took place within this Court's jurisdiction.

## FACTUAL BACKGROUND

7. In mid to late September 2017, Ms. Doe No. 1 was an enrolled student at MSU.

8. That fall, she met Student A who was also an enrolled student at MSU and the two began to casually date.

9. Ms. Doe No. 1 was sexually inexperienced and as a result, Student A assured her that she was "in the driver's seat" as far as any sexual contact between the two parties.

10. Although the exact date is disputed, at some point during their relationship, it is undisputed that Student A penetrated Ms. Doe No. 1's vagina with his penis.

11. Student A admits that Ms. Doe No. 1 "froze" and "was not ok" within five to ten seconds of Student A beginning intercourse.

12. Student A also admits that Ms. Doe No. 1 went from "very open" to "closed body language" and turned on her side and stopped moving.

13. The parties' relationship ended in December 2017.

14. After receiving therapy, Ms. Doe No. 1 provided Student A with a hand-written letter confronting him about the rape in or around March 2018.

15. After Ms. Doe No. 1 told Student A she reported the rape, he stated over text message "We now have both done things the other doesn't agree with without asking."

16. Ms. Doe No. 1 experienced significant discomfort, anxiety, and fear as a result of the constant exposure to a potential encounter with Student A. As time progressed, Ms. Doe No. 1's anxiety about running into Student A and concerns for her safety on campus, caused a disruption to her academic progress.

17. Ms. Doe No. 1 also feared retaliation if she pursued a formal investigation against Student A.

18. The aforementioned circumstances impacted Ms. Doe No. 1's ability to access MSU programs and/or services.

19. As a result of Student A's assault, the psychological harm Ms. Doe No. 1 suffered, and Ms. Doe No. 1's fear of encountering Student A on campus, in the spring 2018 semester, Ms. Doe No. 1's grades plummeted, and she lost

her academic scholarship.

20. On April 6, 2018, Ms. Doe No. 1 submitted a Maxient report, used to document alleged violations of the Code of Student Conduct, to the OIE at MSU.

21. Ms. Doe No. 1 enrolled in the Fall 2018 semester at MSU.

22. On August 29, 2018, Ms. Doe No. 1 sought assistance from OIE in the form of a support letter pertaining to an Emotional Service Animal ("ESA") on campus.

23. Subsequently, OIE provided Disability Services with a letter of support for Ms. Doe No. 1.

24. Ms. Doe No. 1 also began working with the VOICE Center on campus, which is a program that provides confidential support, advocacy, and counseling to students who have been impacted by trauma including sexual assault, relationship violence, harassment, and stalking.

25. In or around September 2018, Ms. Doe No. 1 also reported the rape to the Bozeman Police Department.

26. On September 12, 2018, Ms. Doe No. 1 met with OIE to discuss the OIE investigation process.  Ms. Doe No. 1 again provided an overview of the rape.

27. OIE determined it had jurisdiction since at the time of the rape, both Student

A and Jane Doe No. 1 were students at MSU and the rape constituted a MSU Policy violation.

28. On September 17, 2018, OIE issued the formal complaint to both parties.

29. Pursuant to MSU's Discrimination Grievance Procedures for Allegations of Violations of the Discrimination, Harassment, Sexual Misconduct, Dating Violence, Domestic Violence, Stalking and Retaliation Policy, OIE was to initiate and complete its investigation within forty (40) days.

30. The University Policies implicated in the investigation were as follows:

   a. 225.00 Sexual Misconduct

      i. "Consent" is defined as "an understandable exchange of affirmative words or actions, which indicate a willingness to participate in mutually agreed upon sexual activity. Consent must be informed, freely and actively given.  If coercion, intimidation, threats or physical force are used there is no consent. There is no consent if a person is mentally or physically incapacitated so that such person cannot understand the fact of, or make a reasonable judgment as to, the nature, potential harmfulness of the conduct, or extent of the sexual situation.  This includes incapacitation due to mental disability, alcohol or drug consumption, or being asleep or unconscious. A person who knows or reasonably should have known that another person is incapacitated may not engage in sexual activity with that person.  There is not consent when there is force, expressed or implied, or use of duress or deception upon the victim,  in the absence of mutually understandable words of actions, it is the responsivity of the initiator or the person who wants to engage in the specific sexual activity, to make sure that he/she has the consent from his/her partner(s). Silence does not necessarily constitute consent. Past consent to sexual activities does not imply ongoing future consent.  Whether an individual has taken advantage of a position of influence over an alleged

        victim may be a factor in determining consent.

    ii. "Sexual Assault" is defined as "actual attempted sexual contact with another person without that person's consent." This includes, but is not limited to:…
- "Intentional and unwelcome contact with the breasts, buttock, groin or genitals or touching another with any of these body parts or coercing or forcing or attempting to coerce of force another to touch the perpetrator or themselves with or on any of these body parts."
- "Any other intentional bodily contact in a sexual manner, including contact by a penis, tongue or finger and oral copulation (mouth to genital or genital to mouth contact)
- "Sexual intercourse without consent, including acts commonly referred to as 'rape.'"

b. 223 Sexual Harassment

    i. "unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, including sexual misconduct," and "conduct that is sufficiently serious (i.e. severe, pervasive, or persistent) and objectively offensive so as to deny or limit a person's ability to participate in or benefit from the University's programs, services, opportunities, or activities;" or when such conduct has the purpose or effect of unreasonably interfering with an individual's employment or academic performance.

    ii. A serious incident, such as sexual assault, even if isolated, can be sufficient" in creating a hostile environment.

c. 224 Hostile Environment

    i. "unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, including sexual misconduct," and "conduct that is sufficiently serious (i.e. severe, pervasive, or persistent) and objectively offensive so as to deny or limit a person's ability to participate in or benefit from the University's programs, services, opportunities,

      or activities;" or when such conduct has the purpose of effect of unreasonably interfering with an individual's employment or academic performance

    ii. A serious incident, such as sexual assault, even if isolated, can be sufficient" in creating a hostile environment.

31. On September 19, 2018, Student A retained legal counsel.

32. Ms. Doe No. 1 had trouble attending classes due to the investigation and fear she would run into Student A on campus.

33. On October 16, 2018, Ms. Doe No. 1 filed for a retroactive withdrawal from MSU effective August 24, 2018, as a result of the rape and MSU/OIE's deliberate indifference and failure to take immediate, effective remedial steps to resolve the complaint of sexual harassment.

34. On May 4, 2019, nearly eight months after Ms. Doe No. 1 reported the rape to OIE, Student A graduated from MSU with no consequences while the investigation still remained pending.

35. On July 10, 2019, OIE concluded its final investigation, which found:

    a. Ms. Doe No. 1 provided no specific verbal permission for penile-vaginal intercourse.

    b. Ms. Doe No. 1 expressed a verbal concern that engaging in sexual intercourse would be or was awkward and painful.

    c. That penile-vaginal intercourse occurred on the night in question.

36. Yet, OIE concluded that based on the factual findings and a preponderance

of the evidence standard, there was insufficient evidence to indicate that Student A violated the university Policy Section 225.00 Sexual Misconduct-Sexual Assault and Sections 223.00 and 224.00 Sexual Harassment, Hostile Environment harassment.

37. On July 22, 2019, Maxson submitted his final report to Emily J. Stark, Director of Institutional Equity and Title IX Coordinator.

38. On August 15, 2019, Emily Stark issued a non-finding against Student A and the Mutual No Contact Order issued September 17, 2018, was no longer effective.

39. The trauma that Ms. Doe No. 1 suffered due to the rape was compounded by MSU officials' handling of the matter.

## CLAIM 1
### Sex Discrimination under Title IX of the Education Amendments 1972, 20 U.S.C. §§ 1681-88 – Sexual Harassment/Assault

40. Plaintiff incorporates all previous allegations.

41. Title IX prohibits sex discrimination by recipients of federal education funding.

42. MSU agreed to comply with all applicable federal statutes relating to nondiscrimination by recipients of federal financial assistance.

43. MSU had notice when it accepted federal funding under Title IX that the institution would be liable for intentional sex discrimination and deliberate

indifference to sexual harassment.

44. Pursuant to Title IX, a student may bring a private action against a federal education funding recipient, such as MSU, for the recipient's deliberate indifference to sexual harassment of a student by another student.

45. MSU created and/or subjected Ms. Doe No. 1 to a hostile educational environment in violation of Title IX because:

a) Ms. Doe No. 1 is a member of a protected class;

b) Ms. Doe No. 1 was subjected to sexual harassment in the form of a sexual assault by another student;

c) Ms. Doe No. 1 was subjected to harassment based on her sex; and

d) Ms. Doe No. 1 was subjected to a hostile educational environment created by MSU's failure to properly investigate and/or address the sexual assault and subsequent harassment.

46. Sexual assault and rape are the most vicious forms of sexual harassment.

47. Student A's rape of Ms. Doe No. 1 constitutes sex-based harassment. Student A's conduct, and the subsequent psychological effect it had on Ms. Doe No. 1, was so severe, pervasive, and objectively offensive that it deprived Ms. Doe No. 1 of access to educational opportunities or benefits provided by the school.

48. Ms. Doe No. 1's first Title IX complaint gave MSU actual notice of Student

A's sexual assault, which was gender based.

49. OIE was the appropriate channel at MSU for purposes of reporting Ms. Doe No. 1's Title IX complaint.

50. MSU was in a position to vindicate Ms. Doe No. 1's rights.

51. MSU had authority to address the discrimination.

52. MSU had authority to institute correction measures.

53. MSU exercised substantial control over both the harasser, Student A, and the context in which the harassment occurred, as both Student A and Ms. Doe No. 1 were students of MSU subject to MSU's policies and procedures.

54. Ms. Doe No. 1 expected MSU to act in accordance with the law.

55. Ms. Doe No. 1 expected MSU to act in accordance with university policy.

56. MSU failed to take immediate, effective remedial steps to resolve the complaint of sexual harassment, and instead acted with deliberate indifference towards Ms. Doe No. 1.

57. MSU's deliberate indifference and failure to take timely action in response to Ms. Doe No. 1's report violated its own policies and federal law.

58. MSU acted with gender based discriminatory intent in failing to respond to her complaints.

59. MSU failed to follow its own sexual harassment policy in response to Ms. Doe No. 1's Title IX complaint that she was raped.

60. The Defendant's failure to promptly and appropriately respond to the alleged sexual harassment resulted in Ms. Doe No. 1, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in MSU's education program in violation of Title IX.

61. As a direct and proximate result of these unlawful acts, Ms. Doe No. 1 has suffered and will continue to suffer economic and noneconomic damages in an amount to be determined at trial.

## CLAIM 2
### Sex Discrimination under Title IX of the Education Amendments 1972, 20 U.S.C. §§ 1681-88 – Official Policy/Custom of Discrimination

62. Plaintiff incorporates all previous allegations.

63. In the final report, Maxson stated:

> In her response to the DRAFT Report of Findings, the Complainant inquired about the timeline for the investigation. While every case presented within the Office of Institutional Equity is important, because of the extreme volume of cases and other staffing issues, cases with active students are prioritized over those where students have withdrawn from the University. In this case, the Complainant withdrew (October 16, 2018) prior to the Investigator even being able to meet with the Respondent (October 23, 2018).

64. Based on the foregoing and the failure to provide a timely response to Ms. Doe No. 1's complaint, it is apparent that MSU has an official policy and/or custom of underfunding and understaffing the OIE, and of deprioritizing

cases involving the most severe forms of denial of access to educational opportunities or benefits provided by the school. These official policies and/or customs result in MSU's inability and/or unwillingness to take immediate, effective remedial steps to resolve complaints of sexual harassment and/or assault.

65. MSU engaged in a pattern and practice of behavior designed to discourage and dissuade students and guest students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated.

66. Due to these official policies and/or customs, reasonable students in Ms. Doe No. 1's circumstances would be, and in fact were, chilled from reporting sexual harassment.

67. This policy and/or custom constituted disparate treatment of females and had a disparate impact on female students.

68. Therefore, in addition to its Title IX violations in response to Ms. Doe No. 1's complaints of sexual harassment and assault, MSU violated Title IX through its official policies and/or customs.

69. As a direct and proximate result and natural consequence of these unlawful acts, Ms. Doe No. 1 has suffered and will continue to suffer economic and noneconomic damages in an amount to be determined at trial.

# CLAIM 3
# 42 U.S.C. § 1983
# Denial of Equal Protection under the Fourteenth Amendment

70. Plaintiff incorporates all previous allegations.

71. Section 1983 creates a federal cause of action to address violations of federal statutory or constitutional rights by state officials acting under color of law.

72. At all relevant times, MSU was acting under color of law.

73. At all relevant times, MSU was empowered with a legal obligation to act in response to Ms. Doe No. 1's rape complaint.

74. MSU was deliberately indifferent to the sex-based harassment that Ms. Doe No. 1 reported.

75. Defendant acted with gender-based discriminatory intent in failing to properly respond to Student A's alleged rape of Ms. Doe No. 1.

76. MSU acted with gender-based discriminatory intent in failing to properly respond to Student A's alleged rape of Ms. Doe No. 1.

77. The right to be free from gender-based discrimination has been clearly established for decades.

78. As a direct and proximate result of MSU's unlawful acts, Ms. Doe No. 1 has suffered and will continue to suffer economic and non-economic damages in

an amount to be determined at trial.

## PRAYER FOR RELIEF

For the reasons stated above, Plaintiff respectfully requests the following relief from the Court:

A. Declare that Defendant's acts and conduct constitute violations of federal and state law;

B. Enter judgment in Ms. Doe No. 1's favor on all claims for relief;

C. Award Ms. Doe No. 1 full compensatory damages, economic and non-economic, including, but not limited to, damages for pain and suffering, mental anguish, emotional distress, humiliation, and inconvenience that Ms. Does No. 1 has suffered and is reasonably certain to suffer in the future;

D. Award Ms. Doe No. 1 pre-judgment and post-judgment interest at the high lawful rate;

E. Award Ms. Doe No. 1 her reasonable attorneys' fees (including expert fees), and all other costs of this suit.

F. Enter a permanent injunction requiring MSU to comply with its Title IX obligations to refrain from sex discrimination by mandating actions including, but not limited to, adequately funding and staffing the OIE so as to enable MSU to take immediate, effective remedial steps to resolve all complaints of sexual harassment and/or assault.

G. Award all other relief in law or equity to which Ms. Doe No. 1 is entitled and that the Court deems equitable just, or proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues so triable in this action.

DATED this 28th day of October 2019.

                              By:    /s/Veronica Procter
                                       Veronica A. Procter
                                       PROCTER LAW, PLLC
                                       *Attorney for Plaintiff*