# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# BUTTE DIVISION

| | |
|---|---|
| JANE DOE NO. 1,<br><br>Plaintiff,<br><br>v.<br><br>MONTANA STATE UNIVERSITY,<br><br>Defendant. | No. CV-19-54-BU-SEH<br><br>**MEMORANDUM AND ORDER** |

## INTRODUCTION

Pending before the Court is Defendant's Motion to Dismiss Claim 2.[1] Grounds asserted for the motion are: (1) Plaintiff's disparate impact theory in Claim 2 "is not cognizable under Title IX;"[2] and (2) "Claim 2 [ ] lacks sufficient

---

[1] Doc. 24.

[2] Doc. 25 at 2.

factual allegations that Montana State University ("MSU") implemented or maintained a policy or custom with an intent to discriminate against females."[3] Plaintiff responded on April 16, 2020.[4] Defendant replied on April 30, 2020.[5] A hearing on the motion was held on June 2, 2020.

## PROCEDURAL HISTORY

The First Amended Complaint and Demand for Jury Trial asserted two claims: (1) "Sex Discrimination under Title IX of the Education Amendments 1972, 20 U.S.C. §§ 1681-88 – Sexual Harassment/Assault, Deliberate Indifference;"[6] and (2) "Sex Discrimination under Title IX of the Education Amendments 1972, 20 U.S.C. §§ 1681-88 – Official Policy/Custom of Discrimination."[7] Plaintiff requested, *inter alia*, a declaration "that Defendant's acts and conduct constitute violations of federal law"[8] and "a permanent injunction requiring MSU to comply with its Title IX obligations."[9]

---

[3] Doc. 25 at 2.

[4] *See* Doc. 26.

[5] *See* Doc. 27.

[6] Doc. 5 at 9.

[7] Doc. 5 at 12.

[8] Doc. 5 at 14.

[9] Doc. 5 at 14.

2

On December 12, 2019, Defendant moved to dismiss Claim 2 and claims for declaratory and injunctive relief.[10] Plaintiff responded on January 2, 2020, and moved to further amend the complaint to add Jane Doe No. 2 as a plaintiff.[11]

The motions were heard on March 4, 2020. The motion to add Jane Doe No. 2 as a plaintiff was denied.[12] The December 12, 2019, motion to dismiss was granted upon condition that Plaintiff be accorded opportunity to amend Claim 2.[13] A Second Amended Complaint and Demand for Jury Trial amending Claim 2 was filed on March 13, 2020.[14]

## BACKGROUND

The Second Amended Complaint alleges that Plaintiff was raped by "Student A" in the fall of 2017 while attending Montana State University ("MSU");[15] that on April 6, 2018, Plaintiff "submitted a Maxient report, used to document alleged violations of the Code of Student Conduct, to the [Office of Institutional Equity ('OIE')] at MSU;"[16] that "[Plaintiff] met with the OIE to

---

[10] *See* Doc. 8.

[11] *See* Docs. 10 and 11.

[12] *See* Doc. 20 at 2.

[13] *See* Doc. 20 at 2.

[14] *See* Doc. 23.

[15] *See* Doc. 23 at 6.

[16] Doc. 23 at 8.

3

discuss the OIE investigation process" on September 12, 2018;[17] and that on September 17, 2018, the OIE issued a formal complaint directed to both Plaintiff and Student A.[18] Plaintiff withdrew from MSU on October 16, 2018.[19]

MSU's discrimination grievance procedures provided that the "OIE was to initiate and complete its investigations within forty (40) days."[20] However, investigation of Plaintiff's case was not completed until July 10, 2019, when the OIE issued its finding: "[T]here was insufficient evidence to indicate that Student A violated the university Policy Section 225.00 Sexual Misconduct-Sexual Assault and Sections 223.00 and 224.00 Sexual Harassment, Hostile Environment harassment."[21] The final report stated, in part:

> While every case presented within the [OIE] is important, because of the extreme volume of cases and other staffing issues, cases with active students are prioritized over those where students have withdrawn from the University. In this case, [Plaintiff] withdrew (October 16, 2018) prior to the Investigator even being able to meet with the Respondent (October 23, 2018).[22]

---

[17] Doc. 23 at 8.

[18] *See* Doc. 23 at 8–9.

[19] *See* Doc. 23 at 9.

[20] Doc. 23 at 3.

[21] Doc. 23 at 9–10.

[22] Doc. 23 at ¶ 62.

4

Claim 2 of the Second Amended Complaint, "Sex Discrimination under Title IX of the Education Amendments 1972, 20 U.S.C. §§ 1681-88 – Official Policy/Custom of Discrimination" asserts, in part:

> [I]t is apparent that MSU has an official policy and/or custom of underfunding, understaffing, and/or inadequately training the OIE, of deprioritizing cases involving the most severe forms of denial of access to educational opportunities or benefits provided by the school, and of imposing an unreasonably high burden of proof on alleged victims of sexual assault.
>
> MSU engaged in a pattern and practice of behavior designed to discourage and dissuade students and guest students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults fully investigated.
>
> . . . .
>
> MSU knew in allocating resources and implementing policies regarding the OIE and Title IX compliance that these decisions would have disparate impacts on women and proceeded to deliberately underfund the OIE with the knowledge and intent that women would be harmed by the decision.
>
> These policies and/or customs constitute intentional discriminatory treatment of females and have had a discriminatory and disparate impact on female students. It can reasonably be inferred from MSU's conduct that gender is a substantial or motivating factor behind MSU's discriminatory policies and/or customs described herein.[23]

---

[23] Doc. 23 at ¶¶ 66–67, 72–73.

## LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint.[24] To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[25] A facially plausible complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[26] In considering the motion, a court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party."[27] However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."[28]

## DISCUSSION

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* states, in part: "No person in the United States shall, on the basis of sex, be

---

[24] *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[26] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[27] *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citing *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004)).

[28] *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994)).

excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[29] "Title IX is [ ] enforceable through an implied private right of action . . . ."[30] Claim 2 as asserted in the Second Amended Complaint alleges MSU's policies or customs have had a "disparate impact on female students" and "constitute intentional discriminatory treatment of females."[31]

### A.    Disparate impact

Defendant argues: "Title IX claims may not be based on a disparate impact theory;"[32] that "there must be factual matter separate and apart from disparate impact that plausibly alleges intentional gender discrimination;"[33] and that "[c]ourts that have considered the question have uniformly held [*Alexander v. Sandoval's*] prohibition against disparate impact claims applies to Title IX cases."[34] Defendant also asserts that "since *Sandoval*, courts have routinely

---

[29] 20 U.S.C. § 1681(a).

[30] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998) (citing *Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979)).

[31] Doc. 23 at 16.

[32] Doc. 25 at 6 (citing *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001)).

[33] Doc. 25 at 8.

[34] Doc. 25 at 7 (citing *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448 (S.D.N.Y 2015); *Weser v. Glen*, 190 F. Supp. 2d 384, 395 (E.D.N.Y 2002)).

7

dismissed official policy claims based on disparate impact for the failure to plead discriminatory intent under Rule 12(b)(6)."[35]

In response, Plaintiff argues that "disparate impact 'alone is not determinative, and the Court must look to other evidence'"[36] supporting the claim, that "it is reasonable to infer that MSU knew its decisions would disproportionately harm women,"[37] and that "it intentionally and knowingly proceeded with that course of action knowing women would suffer."[38] Plaintiff also argues "disparate impact allegations of this nature are probative of discriminatory intent and, at least when combined with the additional evidence [ ], give rise to an inference of such intent under the *Twombly* and *Iqbal* standards."[39]

In reply, Defendant maintains "[Plaintiff] fails to cite a single case in which an official policy claim was allowed to proceed under Rule 12 absent factual allegations of discriminatory intent."[40] It distinguishes the instant case from cases

---

[35] Doc. 25 at 7 (citing *Jackson v. Cleveland Clinic Found.*, 2011 U.S. Dist. LEXIS 101768, at *1 (N.D. Ohio Sep. 9, 2011)).

[36] Doc. 26 at 15 (quoting *Arlington Heights v. Metro. Hous. Corp.*, 429 U.S. 252, 265 (1977)).

[37] Doc. 26 at 16.

[38] Doc. 26 at 16.

[39] Doc. 26 at 18.

[40] Doc. 27 at 7.

8

Plaintiff cites in her response, which "involved substantial circumstantial evidence of intent, not mere allegations of disparate impact."[41]

Plaintiff does not dispute Defendant's assertion that Title IX claims may not be based solely on a disparate impact theory. Rather, she argues that the disparate impact MSU's policies or customs have on female students supports an inference of intentional discrimination.[42]

The Sixth Circuit has "conclude[d] that compensatory damages under Title IX are available when a facially neutral policy is challenged only if an intentional violation is shown."[43] The Seventh Circuit has adopted a similar standard that "disparate impact alone is not sufficient to establish a violation" in the Title IX context.[44] The Ninth Circuit has not addressed the issue.

This Court concludes that Claim 2 cannot survive Defendant's motion to dismiss based solely on a disparate impact theory. In order to survive, such a claim must be pled with sufficient factual allegations that MSU's official policies or customs were intentionally discriminatory against female students.

///

---

[41] Doc. 27 at 8.

[42] *See* Doc. 26 at 18.

[43] *Horner v. Ky. High Sch. Athletic Ass'n*, 206 F.3d 685, 692 (6th Cir. 2000).

[44] *Cannon v. Univ. of Chi.*, 648 F.2d 1104, 1109 (7th Cir. 1981).

## B. Intentional discrimination

Defendant argues: "While it is perhaps 'conceivable' that the OIE was underfunded to intentionally discriminate against females, it is hardly plausible;"[45] that "the bare conclusion that MSU 'deprioritize[ed] cases involving the most severe forms of denial of access' does not even mention gender;"[46] and that the policy or custom of "imposing an unreasonably high burden of proof on alleged victims of sexual assault," does not mention gender and is lacking in factual support.[47]

In response, Plaintiff asserts "[g]iven the disparate impact [the] OIE's functions have with respect to women, it is reasonable to infer that gender was a 'motivating factor' in the decision"[48] to "deprive [the] OIE of the resources it needs."[49] Plaintiff also maintains that MSU's policy of prioritizing active student sexual assault investigations over inactive student investigations "shows that MSU has acted in conscious disregard of its most basic duty to prevent women from

---

[45] Doc. 25 at 10.

[46] Doc. 25 at 11 (quoting Doc. 5 at ¶ 63).

[47] Doc. 25 at 12 (quoting Doc. 5 at ¶ 63).

[48] Doc. 26 at 17–18 (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709 (2d Cir. 1994)).

[49] Doc. 26 at 17.

being excluded from participation in MSU's educational program on the basis of sex."[50]

Plaintiff further argues that MSU's imposition of "an unreasonably high burden of proof on victims of sexual violence, [by] regularly concluding no rape occurred despite overwhelming evidence . . . supports[ ] a reasonable inference that MSU intentionally discriminates against women."[51] Moreover, Plaintiff claims that a discriminatory intent pleading requirement violates Ninth Circuit precedent.[52]

Here, Plaintiff has not pleaded sufficient factual content in Claim 2 to permit the Court to draw a reasonable inference that MSU's alleged official policies or customs were intentionally discriminatory against female students, in violation of Title IX.[53] Claim 2, as pleaded, fails.

Four separate alleged policies or customs are asserted to support intentional discrimination against female students, including:

1. "[U]nderfunding, understaffing, and/or inadequately training the OIE;"[54]

---

[50] Doc. 26 at 27–28.

[51] Doc. 26 at 26–27.

[52] *See* Doc. 26 at 28 (citing *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994); *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998); *Jeldness v. Pearce*, 30 F.3d 1220, 1227–28 (9th Cir. 1994)).

[53] *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[54] Doc. 23 at 14.

2. "[D]eprioritizing cases involving the most severe forms of denial of access to educational opportunities or benefits provided by the school;"[55]

3. "[I]mposing an unreasonably high burden of proof on alleged victims of sexual assault;"[56] and

4. "[D]iscourag[ing] and dissuad[ing] students and guest students who had been sexually assaulted from seeking prosecution and protection and from having sexual assaults fully investigated."[57]

Even if Plaintiff's allegation that "[w]omen are disproportionately victimized by sexual misconduct, sexual harassment, and sexual assault"[58] is taken as true, Claim 2 does not plausibly suggest that these alleged policies or customs were intentionally discriminatory against female students. Plaintiff has not adequately pleaded that MSU's alleged policy of "underfunding, understaffing, and/or inadequately training the OIE" was intentionally discriminatory against female students. The OIE investigates alleged violations of the Code of Student Conduct at MSU, regardless of the sex of alleged victims.[59] Plaintiff's argument

---

[55] Doc. 23 at 14.

[56] Doc. 23 at 15.

[57] Doc. 23 at 15.

[58] Doc. 23 at 15 (citing *Austin v. Univ. of Or.*, 205 F. Supp. 3d 1214, 1225 (D. Or. 2016)).

[59] *See* Doc. 23 at 8.

that MSU "proceeded to deliberately underfund the OIE with the knowledge and intent that women would be harmed by the decision"[60] is not plausible.

Plaintiff likewise has not adequately pleaded that MSU's alleged policy "of deprioritizing cases involving the most severe forms of denial of access to educational opportunities or benefits provided by the school" is intentionally discriminatory against female students. The Court cannot reasonably infer that the policy of prioritizing cases with active students over those including former students who have withdrawn from MSU is intentionally discriminatory against female students. Even if this policy could be said to have a disparate impact on women, it does not plausibly suggest intentional discrimination.

Moreover, Plaintiff has not adequately pleaded that MSU's alleged policies or customs of "imposing an unreasonably high burden of proof on alleged victims of sexual assault" and "discourag[ing] and dissuad[ing] students and guest students who had been sexually assaulted from seeking prosecution and protection" are intentionally discriminatory against female students. Although women may be more likely than men to be the victims of sexual assault, such allegations lack

---

[60] Doc. 23 at 16.

factual support of intentional discrimination meeting the pleading requirements of *Iqbal*[61] and *Twombly*.[62]

ORDERED:

1. Defendant's Motion to Dismiss Claim 2[63] is GRANTED.

2. Claim 2, "Sex Discrimination under Title IX of the Education Amendments 1972, 20 U.S.C. §§ 1681-88 – Official Policy/Custom of Discrimination" is DISMISSED WITH PREJUDICE.

3. Defendant shall file an answer to the remaining claim in the Second Amended Complaint on or before July 2, 2020.

DATED this 24th day of June, 2020.

Sam E. Haddon
SAM E. HADDON
United States District Judge

---

[61] 556 U.S. 662.

[62] 550 U.S. 544.

[63] Doc. 24.